## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                          **3:06cr20/RV**
                                                **3:08cv196/RV/MD**

**DEONSEY LONTE JOHNSON**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 106). The government has filed a response (doc. 111) and the defendant has filed a reply (doc. 118). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I. BACKGROUND

Defendant Deonsey Lonte Johnson and Teddy Lee Hicks, Jr. were charged in a two count indictment with violations of 18 U.S.C. §§ 2119 and 2 (carjacking) and 18 U.S.C. § 924(c)(1)(A) and 2 (using and carrying a firearm in furtherance of a crime of violence) (doc. 1). Defendant was represented by appointed counsel Stephen E. Sutherland. Defendant was convicted after a two day jury trial at which the following facts were found by the Eleventh Circuit to have been proven:

On September 30, 2005, in Pensacola, Florida, Hicks and his girlfriend Heather Wylie, were sleeping in Hicks's parents (sic) trailer. They were drug addicts, having stayed up the night before using cocaine. Johnson came to the trailer, awakened them, and said that he had seen someone – the eventual victims – with a wad of cash at a nearby gas station. Hicks and Wylie immediately dressed, Hicks armed himself with his pistol-grip shotgun and he, Wylie and Johnson drove to the gas station in his car. Johnson rode in the front passenger's seat; Wylie was in the back seat.

By the time they got to the gas station, the victims were on the highway, headed toward Interstate 10. Hicks followed the victims' car onto the interstate and pulled into the left lane, alongside the car. Johnson motion to the victims that their car was dragging something and indicated that they should pull off the highway onto the shoulder. Hicks drove onto the shoulder, and the victims followed suit, parking behind Hicks's car. The victims got out of their car and walked behind it to see what was wrong. As they were examining their car Johnson approached them with the shotgun, yelling "give it up, I'm not playing." The victims indicated that any cash they had was in their car, so Johnson got into its driver's seat, left the victims standing there, and drove off, with Hicks's car in the lead. The two vehicles then exited the interstate. Johnson turned down a dirt road, right off the exit. Hicks, driving ahead, backed up and pulled beside Johnson. They transferred the victims' belongings to Hicks's car drove to Johnson's residence, a trailer, and divided their spoils.

These events were described by the victims and by Wylie, who testified under a grant of use immunity. She was facing charges stemming from what we have related above and a home invasion robbery Hicks and she had committed three days before, using Hicks's shotgun. Wylie's testimony removed any doubt as to the identity of the two men with her during the carjacking; they were Hicks and Johnson.

(Doc. 104 at 3-5).

On January 9, 2006, Bureau of Alcohol, Tobacco and Firearms Special Agent Ronald Williams interviewed victims Mandy Nicolosi and Alphonse Tillman in Slidell, Lousianna. He also showed them photographic line-ups to see whether they could identify Hicks, Johnson and Wylie. (Doc. 85 at 59-62, 109, 238-241). Ms. Nicolosi was able to identify Johnson as the shotgun carrying man who had robbed her and

Tillman, and she identified Wylie from a separate lineup as the white female passenger in Hicks' car. (Doc. 85 at 59-66, 86-89, 133-134, 239-242). Mr. Tillman was interviewed separately, without having been allowed to speak with Ms. Nicolosi. (Doc. 85 at 241-242). Tillman identified Johnson as the man who robbed him at gunpoint, but was unable to identify Wylie. (Doc. 85 at 109-113, 140, 242-242, gov. exh. 4). Neither Nicolosi nor Tillman was able to identify Hicks, the driver of the car. (Doc. 85 at 69, 117). At trial, Nicolosi and Tillman each positively identified Johnson as the man who had taken their car. (Doc. 85 at 66-67, 109). Williams, Nicolosi and Tillman testified that the victims had not been shown line-ups before their interviews with Agent Williams, neither had seen pictures or news reports identifying the defendants as suspects, and no one has suggested to them which photograph they should pick. (Doc. 85 at 86-89, 108-113, 131-134).

Heather Wylie, who testified under a grant of use immunity, admitted her involvement in the carjacking, and identified her former fiancee Hicks and Johnson as the two men involved. (Doc. 85 at 158-237, 250-256).

A PSR was prepared after defendant's conviction. Defendant's base offense level pursuant to § 2B3.1 (robbery) was 20. Defendant did not receive a five level adjustment pursuant to § 2B3.1(b)(2)(c) which might otherwise have applied because he was also convicted under 18 U.S.C. § 924(c). Because the offense involved carjacking, there was a two level increase pursuant to § 2B3.1(b)(5), and a two level adjustment for obstruction of justice was also applied due to defendant's false testimony at trial. His total offense level was 24, and his criminal history category was VI.

At sentencing, counsel raised an objection to the obstruction adjustment, which was overruled. The district noted that it had written "obstruction" in the notes taken during defendant's testimony no fewer than 18 times and also had written a note that defendant had lied "as to every question he is being asked." (Doc. 87 at 3-4). The court then specifically found that the defendant had "brandished" the

firearm during the offense conduct.  (Doc. 87 at 5).  When given the opportunity to speak, defendant maintained his innocence, stating twice that he had nothing to do with the crime.  (Doc. 87 at 6-7).  The court sentenced him to a term of 125 months imprisonment on count 1 and a consecutive term of 84 months imprisonment on count 2.  The sentence on count 1 was at the top of the guidelines range due to the defendant's extensive criminal history, lack of remorse and the violent nature of the conduct, while the 84 month sentence was the statutory minimum mandatory.  (Doc. 87 at 8-9).

Defendant appealed, challenging the sufficiency of the evidence against him. The appellate court found that the government's case against him was "overwhelming on both counts," rejected his sufficiency-of-the-evidence challenge, and affirmed his conviction.

In the present motion, defendant raises ten grounds for relief, each identifying alleged deficiencies in the performance of trial counsel.  The government opposes the motion in its entirety.

## I.  LEGAL ANALYSIS

### A.  General Legal Principles

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned,

result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1

(11th Cir. 1993).   The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,*  494 F.3d 997, 1002 (11th Cir. 2007).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th  Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United*

*States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th

Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).


B. Specific Claims for relief

1. Failure to inform of Joint Defense Privilege

Defendant first contends that trial counsel was ineffective because he failed to inform the defendant of the "joint defense privilege." He states that because his co-defendant "conceded guilt," their defenses were antagonistic.

It appears from his argument in his initial motion and reply brief that defendant suggests counsel should have moved for a severance. Generally, persons who are charged together should also be tried together. *United States v. Chavez,* 584 F.3d 1354, 1359-1360 (11th Cir. 2009); *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007); *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir.

2005); *United States v. Pedrick*, 181 F.3d 1264, 1272 (11th Cir. 1999); *United States v. Knowles*, 66 F.3d 1146, 1158 (11th Cir. 1995), *cert. denied sub nom. Wright v. United States*, 517 U.S. 1149, 116 S.Ct. 1449, 134 L.Ed.2d 568 (1996). A distirct court may order separate trials of the defendants if it appears that a joint trial will prejudice the defendants. Fed.R.Crim.P. 14(a). Some degree of bias is inherent in any joint trial. *Baker*, 432 F.3d at 1236. To establish an entitlement to a motion to sever, a defendant must demonstrate that a joint trial would result in "specific and compelling prejudice" to the defense. *Chavez,* 584 F.3d at 1360; *Baker*, 432 F.3d at 1236; *United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997). Severance is not required when the possible prejudice may be cured by a cautionary instruction. *United States v. Walser*, 3 F.3d 380, 386 (11th Cir. 1993).

In this case, defendant argues that there was a basis for severance because co-defendant Hicks' defense was essentially that he was present at the carjacking, but that he did not know that a carjacking, rather than a mere robbery, which is not a federal offense, was about to take place.

In defense counsel's brief opening statement in behalf of Mr. Hicks, he focused on the fact that besides the testimony of Ms. Wylie, there would be no other evidence linking Mr. Hicks to the crime. (Doc. 85 at 39-40). Thus, it appeared that his identity would be the primary defense. Counsel noted the government's theory of aiding and abetting, but did not suggest during his opening statement that his client had no knowledge that a carjacking was going to occur. (Doc. 85 at 38-39). It was only during closing argument that counsel conceded that the evidence showed that a carjacking had occurred but brought up the question of whether Hicks had been a "willful participant" in a planned carjacking, as the evidence was that no pre-planning, at least on the issue of taking the car, had taken place. (Doc. 86 at 25, 26-27, 30-32)

Prior to trial, there was no apparent basis to grant a motion to sever. Defendant does not explain how his defense of "it was not me" was prejudiced by co-defendant Hicks' admission in accordance with the evidence that a car jacking occurred, but that Hicks could not be guilty of aiding and abetting because there was no plan.  The jury was specifically instructed that the case of each defendant should be considered separately and individually, and that a finding of guilty or not guilty as to one defendant should not affect its verdict as to any other defendant or on the other charge.  (Doc. 41 at 21).

2.  <u>Failure to object to admission of the photo spread presented at trial</u>

Defendant appears to assert that counsel should have objected to the photo spread used for the witnesses to identify him.  He notes that the victims described the suspect as in his early 20's, dark-skinned with short cropped hair, but that he was the only individual meeting that description in the photo line-up. (See doc. 112).

Johnson's trial counsel, Mr. Sutherland, notes in his affidavit that while neither victim was able to give a precise description of the alleged assailant after the event, each easily picked defendant out of the photo line-up and identified him at trial.   Neither victim expressed the slightest doubt in his or her independent identification of the defendant.   Counsel also noted that he used the photo line-up to attempt to convey a "weighted" identification, which was rejected by the jury, possibly due to the positive in-court identification and/or Ms. Wylie's testimony. (Doc. 111-1 at 1-2).

Any alleged damage from the photo spread had already been done.   Its introduction at trial did not prejudice the defendant, and there was no meritorious basis for an objection.  Counsel is not ineffective for failing to preserve or argue a meritless claim*.  Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,*

240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence)*; Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful). Defendant is not entitled to relief on this claim.

3. <u>Failure to investigate alibi defense theory</u>

Defendant contends that counsel dismissed defendant's alibi defense without making an effort to locate the witnesses he had who could support the theory. As a result, he was left with no choice but to abandon this "legitimate" defense.

Defendant's conclusory assertion that counsel failed to follow through on a legitimate alibi defense is squarely  refuted by counsel's affidavit and the record. Counsel filed a notice of alibi (doc. 21) which counsel indicated he abandoned when his investigation revealed the defendant was not forthcoming with the facts. In the notice of alibi, counsel reported that from 8:00 a.m. to 11:00 a.m. on the date in question, defendant was with his wife for a pregnancy check-up, and from 11:00 a.m. to 2:30 p.m. he was at the Red Roof Inn parking lot behind University Mall getting a new key made for his vehicle. (Doc. 21). The notice listed as witnesses defendant's wife Keshondra Johnson, Eboni Jenkins, the records custodian for the medical office of Dr. Donna Bennett and the Records Custodian of Ace Unlocks. (*Id.*).

Counsel's contact with the doctor's office indicated that Mrs. Johnson was not scheduled for an appointment that day, and she did not appear. (Doc. 111-1 at 2). Although defendant claimed to have papers from the doctors office to show his wife was there, he never gave his attorney these papers (*id.*), and in fact he admitted during his testimony at trial that it may have been the day before that they were there. (Doc. 85 at 339). When contacted by counsel, the locksmith reported no services either to the defendant or to the location he described on the date in question. Again, paperwork the defendant claimed to have was never provided to counsel. (Doc. 111-1 at 2). Finally, although Mrs. Johnson was called to testify at trial, counsel states that she "emphatically did not want to" and so Mr. Johnson agreed to release her. (*Id.*).

Defendant's version of events in his reply is notably different than what he previously reported to counsel. He states that he was with or waiting for the locksmith for at least two hours on the date in question before meeting up with his wife at the doctor's office. Previously, he had indicated both that his wife was there with him, and that this occurred after the doctor's appointment (which he conceded during this trial testimony was likely the day before the alleged offense conduct). And, although he had identified the locksmith as being from Ace Unlocks, in his reply he indicates that the locksmith named Mike was an employee (now former employee) of Pop-a-Lock who had since moved to Alabama. Finally, defendant asserts that his wife never refused to testify.

The Supreme Court has stated that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. Lawyers "do not enjoy the benefit of endless time, energy, or financial resources." *Williams v. Head*, 185 F.3d 1223, 1237 (11th Cir. 1999). As such, a lawyer is not required to "pursue every path until it bears fruit or until all hope withers." *Id.* Contrary to defendant's assertion, in this case, the record reflects that

counsel did make attempts to investigate and substantiate his client's claim. Defendant has not submitted any affidavits or documentary evidence that would offer any support for what he now states. Defendant's unsupported assertions simply do not support a finding that counsel was constitutionally ineffective for failing to further pursue the alibi defense.

4. <u>Failure to object to admission of photographs</u>

Defendant contends that counsel did not object to the admission of photographs of the two-door car allegedly used during the commission of the offense, although the victims testified at trial that the getaway car was a four-door vehicle. Defendant also makes reference to the fact that the car was not in the custody of the Escambia County Sheriff's Office although counsel had been told that it was.

The victims' testimony about the car used in the commission of the carjacking was not consistent. Ms. Nicolosi testified that the car was a four-door, (doc. 85 at 68, 76), while Mr. Tillman testified that he thought it was a two-door. (Doc. 85 at 116). Counsel states in his affidavit that there was no basis to object to the admission of the photograph of the two-door car, and in fact the photo could only help his client's case because it did not precisely match the description given by the victims. Furthermore, the car that was identified by Heather Wylie as the one the three individuals rode in before the carjacking incident had a distinguishing luggage rack on the back that was not mentioned by either Nicolosi or Tillman. There being no meritorious basis for an objection, counsel was not constitutionally ineffective for his failure to object.

In his reply, defendant speculates about the existence of exculpatory evidence in the two-door car, such as fingerprints of the "real perpetrator" sought in connection with the carjacking, and suggests that counsel should have investigated same. Even if such an investigation would have been reasonable, it is unlikely that

it would have born fruit. At trial, Jacqueline Holland from the Escambia County Sheriff's Office, who was a crime scene technician at the time of the event in question, testified that she had been unable to get any fingerprints off Mr. Tillman's vehicle shortly after it was recovered. (Doc. 85 at 155-156). She further explained that, contrary to what is depicted on television, this is not unusual, and in fact usable prints are collected in less than five percent of cases. (Doc. 85 at 156). Defendant's suggestion that usable, exculpatory prints could have been collected off the 2-door grey Ford is nothing more than speculation.

5. <u>Failure to object to hearsay testimony</u>

At trial, the prosecutor asked witness Wylie whether Mr. Hicks could hear threats supposedly made during the car jacking and Wylie responded "Yes, Sir." Defendant states that because Hicks did not testify, defendant was unable to cross-examine him on this issue.

Defendant fails to explain the significance to his own guilt or innocence of whether Mr. Hicks could hear the threats that were made to the victims. Ms. Wylie's testimony that she could hear the threats and her indication that Mr. Hicks could as well (doc. 85 at 169-170) did not constitute "testimony" from Mr. Hicks. The victims testified that they were threatened, and Ms. Wylie indicated that she heard the threat. (Doc. 85 at 69-70, 102-103, 123-124, 170-171). While defendant is correct that Ms. Wylie's suggestion that co-defendant Hicks heard the threats was speculative, whether this testimony constituted "hearsay" or "opinion" testimony, as defendant attempts to characterize it in his reply, the fact remains that this testimony was directed at Mr. Hicks, not at the defendant, and virtually irrelevant to the outcome of the proceedings. Counsel was not constitutionally ineffective for failure to object, and even if he should have objected, defendant cannot show prejudice.

6.  <u>Failure to move for a severance</u>

Defendant asserts that counsel should have moved for a severance because 404(b) evidence offered during the trial against his co-defendant prejudiced him.  He further contends that the special jury instructions had "little effect" on the prejudicial impact of this testimony.

The evidence in question was of a home invasion robbery that took place three days before the carjacking.  Heather Wylie testified that she and Hicks broke into the home of an individual named Pablo Rivera Ceron and robbed him to obtain money for drugs.  Mr. Ceron testified through an interpreter that he suffered severe injuries after Mr. Hicks hit him about the face with the butt of a shotgun during this home invasion.  Ceron also described the gun as being similar to the one used in the carjacking.

Attorney Sutherland states in his affidavit that he and his client had several communications about severing the trial, and that strategically they came to the conclusion that a joint trial would better serve Mr. Johnson's interests.  Regardless of any strategic discussion and agreement (which defendant sharply contests in his reply), defendant must show that had counsel made the motion, it would have been granted and the outcome of the proceedings would have been different.

As noted above, in order to warrant a severance, a defendant must demonstrate that a joint trial would result in "specific and compelling prejudice" to the defense.  *Chavez,* 584 F.3d at 1360; *Baker*, 432 F.3d at 1236; *United States v. Liss*, 265 F.3d 1220, 1227 (11th Cir. 2001); *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997). "The test for assessing compelling prejudice is whether under all the circumstances of a particular case it is within the capacity of jurors to follow a court's limiting instructions and appraise the independent evidence against a defendant solely on that defendant's own ... conduct in relation to the allegations contained in the indictment and render a fair and impartial verdict." *United States v. Hersch,* 297 F.3d 1233, 1243 (11th Cir. 2002) (quoting *United States v. Walser*, 3 F.3d

380, 386-87 (11th Cir. 1993)). Severance is justified only if "the prejudice flowing from a joint trial is clearly beyond the curative power of such instructions. *Baker*, 432 F.3d at 1236. The defendant's burden remains the same when seeking reversal of the denial of a motion to sever on appeal, or presumably in a motion to vacate. *See Liss,* 265 F.3d at 1227; *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997). This burden is a heavy one that cannot be met with mere conclusory allegations. *United States v. Walser*, 3 F.3d 380, 386-87 (11th Cir. 1993); *United States v. Hogan*, 986 F.2d 1364, 1375 (11th Cir. 1993).

The 404(b) evidence against co-defendant Hicks was for an incident totally unrelated to the carjacking. That it could have prejudiced the defendant with respect to the jury weighing his guilt or innocence is highly improbable. This is particularly so when the jury was instructed precisely how it was to consider the similar acts evidence and that the evidence against each defendant was to be considered separately. (Doc. 41 at 9, 21). The jury is presumed to have followed the judge's instructions. *Hallford v. Culliver,* 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Bennett,* 368 F.3d 1343, 1351 (11th Cir. 2004), *remanded for reconsideration after Booker*, 543 U.S. 1110, 125 S.Ct. 1044, 160 L.Ed.2d 1041 (2005); *United States v. Calderon*, 127 F.3d 1314, 1334 (11th Cir. 1997); *United States v. Wilson,* 149 F.3d 1298, 1302 (11th Cir. 1998); *United States v. Chandler,* 996 F.2d 1073, 1088 (11th Cir. 1993); *Raulerson v. Wainwright,* 753 F.2d 869, 876 (11th Cir. 1985).

The introduction of potentially damaging but totally unrelated 404(b) evidence against co-defendant Hicks did not provide the basis for a legally meritorious motion for severance. Counsel was not ineffective for failing to so move for this or any other reason.

7. <u>Failure to object to prosecutor approaching and gesturing towards defense table</u>

Defendant complains that at trial, the prosecutor approached the defense table several times, making pointing gestures, until co-defendant's counsel objected and asked him to remain at the podium.  His own attorney remained silent.

The portion of the record to which defendant cites is during the testimony of Heather Wylie. (Doc. 85 at 186-187).  Ms. Wylie was asked to identify the defendant, and Mr. Hensel, the Assistant United States Attorney, apparently stepped away from the podium to point and ask the record reflect that she had identified Mr. Johnson. He began to ask the witness a question about the person who was driving the older model car and at this point Mr. Keith, counsel for co-defendant Hicks, asked that counsel stay at the podium.  Mr. Hensel responded that he would.

The government argues that defendant has failed to show how this prejudiced him, particularly in light of the fact that co-counsel lodged an objection, and there is no record indication that Mr. Hensel stepped away from the podium again.  His hollow, conclusory assertion in his reply that the "impermissible theatrics displayed by the prosecutor could have lead or persuaded the jury to infer guilt upon the defendant" is unsubstantiated.


8. <u>Failure to object to prejudicial question and answer</u>

At trial, co-defendant's counsel asked Heather Wylie whether she was charged in State Court along with Mr. Hicks and Mr. Johnson with the offense of car-jacking. She acknowledged that she was, and counsel continued "and robbery, or whatever the charges are right?" Again, Ms. Wylie answered in the affirmative.    Defendant now states that this questioning suggested the presence of other charges and crimes and opened the door for improper comments by the prosecutor during the second day of trial during closing arguments.  Defendant asserts that there is a reasonable probability that if not for the introduction of other bad acts or wrong doings that the outcome of the proceedings would have been different.

Defendant is correct that Mr. Keith referred to "robbery, or whatever the charges are." (Doc. 85 at 190)  However, this reference was clearly made to state court charges related to the offense conduct at issue in the federal criminal case. To the extent that Mr. Hensel referred to home invasion robberies, in the plural, during his closing, none of these references were directed toward defendant Johnson.  Thus, Johnson has failed to show that counsel was constitutionally ineffective for his failure to object to this line of questioning.

9.  <u>Failure to object to closing argument</u>

Defendant asserts that the prosecutor's reference during closing argument to defendant having the firearm three days prior was improper because the evidence showed that only his co-defendant was involved in the home invasion robbery referred to by the government.

In Mr. Hensel's closing argument, in talking about the victims' reaction to being confronted with the gun he stated: "They don't want to be killed.  They don't want that firearm to go off, like it did when it was in his hands three days earlier." (Doc. 86 at 9).  Clearly, as defendant states, Mr. Hensel's reference to the gun being in defendant's hands three days earlier was not supported by the evidence. There is no suggestion that this was an intentional misstatement of the evidence, and in fact the jury was advised that whatever the attorneys say is not evidence.  Although defendant complains that counsel failed to object, objecting to the statement could just as easily have drawn unnecessary attention to counsel's remark.  There was absolutely no record support for a finding that defendant had held the gun three days earlier, and whether or not he had would have been irrelevant to the jury's finding of guilt with respect to the instant charges.  Defendant has not shown, in light of the totality of the record, that the outcome of the proceedings would have been different had counsel objected to this single statement.

10. <u>Failure to object to statements made during closing argument</u>

Defendant's tenth claim also involves allegedly improper statements made during closing argument. He states that in recapping that the defendants were "questioned about some home invasion robberies," the implication was that there were other robberies, which defendant presumably wishes to argue was prejudicial. Again, Mr. Hensel's statements during closing argument in no way implicated the defendant in any home invasion robbery or other unlawful conduct, and there was no record evidence to support such an inference by the jury. (Doc. 86 at 12, 14). As such, there was no basis for an objection, and counsel was not constitutionally ineffective.

Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds that there has been no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Based on the foregoing, it is respectfully RECOMMENDED:**

**The motion to vacate, set aside, or correct sentence (doc. 106)  be DENIED.**


**At Pensacola, Florida, this 12th day of February, 2010.**



/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636;** ***United States v. Roberts***, **858 F.2d 698, 701 (11th Cir. 1988).**